**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jeffrey Allan KING, Defendant-Appellant.**

No. 90-8072.

United States Court of Appeals, Tenth Circuit.

June 12, 1991.

---

David A. Kubichek, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., Cheyenne, Wyo., with him on the brief), Casper, Wyo., for plaintiff-appellee.

Laurence P. Van Court, Cheyenne, Wyo., for defendant-appellant.

Before HOLLOWAY, BARRETT and SEYMOUR, Circuit Judges.

BARRETT, Senior Circuit Judge.

Jeffrey Allan King (King) appeals his jury convictions of conspiracy to possess with intent to distribute a controlled substance, unlawful use of a communication facility to facilitate the commission of a felony, aiding and abetting in the distribution of a controlled substance, and carrying and using a firearm during and in relation to a drug trafficking offense, in violation of 21 U.S.C. §§ 846, 841(a)(1), 843(b) and 18 U.S.C. §§ 2 and 924(c).

King, Francis G. Stallings (Stallings), Lisa Buttars (Buttars), and others were charged in a four-count indictment following an investigation into a cocaine and marijuana distribution organization. Stallings, Buttars, and one Rhonda Shankle became cooperating witnesses for the government. A brief summary of the relevant evidence follows.

Stallings began a cocaine and marijuana distribution business in 1987. Thereafter, until May, 1989, he would travel from his home in Boulder, Wyoming to Arizona, New Mexico, and other areas to purchase cocaine and marijuana for redistribution in Wyoming. In late 1987 or early 1988, Stallings entered into an agreement with Buttars whereby Buttars would sell cocaine and marijuana for Stallings and retain fifty per cent of the profits for her services.

In June, 1988, Buttars began selling cocaine and marijuana to King on a relatively regular basis. On one occasion, Buttars confided to King that Stallings was becoming frustrated with his Phoenix marijuana sources. When King indicated that he could possibly assist Stallings in obtaining marijuana, Buttars arranged for King to meet with Stallings in mid-October 1988, at her grandmother's house. After a brief

meeting during which King related that his friends and contacts in Colorado cultivated marijuana and that supplies were abundant, King, Stallings, and Shankle drove to Walsenburg, Colorado.

Once in Walsenburg, Stallings dropped King off at a house belonging to "Rick and Beverly." Stallings and King later picked up King's friend "Tony" and drove into the country where Stallings was able to purchase a pound and a half of high grade marijuana at two separate locations. The next day Stallings, Shankle and King drove to Commerce City, Colorado, where King introduced Stallings to an individual named "Tom." Tom thereafter introduced Stallings and King to another individual also named "Tom" who sold Stallings two pounds of marijuana.

After the parties returned to Wyoming, King continued to purchase cocaine and marijuana from Buttars. In early April, 1989, King also accompanied Buttars on a trip to Boysen State Park during which Buttars delivered a quarter pound of marijuana to a Michael Leder.

During his trial, King presented a *pro se* motion to have his defense counsel removed. In support of his motion King alleged, *inter alia,* failure of counsel to subpoena certain important defense witnesses and bias of the court. The court denied the motion. King was convicted on all four counts. King's motions for judgment of acquittal on Count III (aiding and abetting in the distribution of a controlled substance) at the conclusion of the government's case-in-chief and after trial were denied.

On appeal, King contends that he was denied effective assistance of counsel and that the evidence was insufficient to convict him on Count III.

## I.

■ King contends that he was denied his right to effective assistance of counsel because his trial counsel refused to contact, interview, or subpoena two important defense witnesses, Rick and Beverly Martinez.

King notes that two of the overt acts allegedly in furtherance of the conspiracy charged in Count I dealt with his trip with Stallings and Shankle to Walsenburg, Colorado. During the trial, Stallings testified that King accompanied Shankle and himself to Colorado to introduce them to some potential drug sources. King subsequently testified that he went with Stallings and Shankle to Colorado to help purchase well drilling equipment for Stalling's business. King argues that under such circumstances, the testimony of the Martinezes "might" have been determinative as to whether he was a member of a conspiracy to obtain and distribute marijuana and cocaine and that his trial counsel's failure to contact and subpoena them gave rise to ineffective assistance of counsel.

The government responds that King's contentions are frivolous. The government points out that King failed to provide counsel with the Martinezes' names, addresses, and phone number prior to trial and that King testified during cross examination that he did not know their last name. The government further notes that it is doubtful that either Rick or Beverly would have agreed to testify on behalf of King even if subpoenaed when, as here, King testified that Rick and Beverly freely used marijuana supplied by Rick, that it was Rick who purchased the marijuana for delivery to Stallings and Shankle, and that it was Rick "who set it up" so he (King) could contact "Tom" in Commerce City.

The government also points out that during King's *pro se* motion hearing, King's counsel stated:

Your Honor, I'd like to point out one thing. Early on in this matter I asked Mr. King to provide me with the names and addresses and phone numbers of individuals who could assist in providing his defense. They were never forthcoming. Any defense was based upon materials, and as I learned from the case from DCI discovery investigation reports that I received.

(R., Vol. VI at 11).

■ The "proper standard for attorney performance is that of reasonably effective

assistance." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish ineffective assistance of counsel sufficient to warrant reversal of a conviction, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense. *Id.; United States v. Pena,* 920 F.2d 1509, 1518–19 (10th Cir.1990).

In determining whether a defendant has been afforded effective assistance of counsel, the adequacy or reasonableness of an attorney's action is necessarily conditioned by the defendant's own action or inaction. *United States v. Miller,* 907 F.2d 994, 998 (10th Cir.1990). An attorney's failure to investigate "cannot be charged as a claim of 'ineffective assistance of counsel' when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself." *Id.* at 999.

Inasmuch as King failed to provide his trial counsel with the names, addresses, and telephone number of people who could assist in developing his defense, we hold that counsel's failure to interview or subpoena the Martinezes did not give rise to ineffective assistance of counsel. As the court observed under similar circumstances in *United States ex rel Kleba v. McGinnis,* 796 F.2d 947, 958 (7th Cir.1986):

> Kleba failed to inform his counsel of 'Candy' [an undisclosed witness] until the day of his trial and the record fails to disclose whether prior to trial Kleba ever provided Brody [Kleba's counsel] with a description of Candy or even stated her approximate age. Further ... [Kleba] was unable to provide his attorney with the proper full name or address of 'Candy' ... a potential witness. Thus, Kleba rather than Brody was responsible for Candy not being located prior to trial, and we refuse to use hindsight to 'second guess [Brody's] legitimate tactical decision [ ]' not to search for a potential witness that his client never informed him of prior to trial ... a witness whose true name and address were not known

even by the defendant Kleba. We conclude that Brody's failure to investigate the whereabouts of 'Candy' neither prejudiced Kleba's defense nor constituted deficient performance of Brody as defense counsel.

## II.

King contends that there was insufficient evidence to support his conviction under Count III and that the district court erred in denying his motions for acquittal.

King argues that the "sum and total" of the government's evidence concerning Count III came from telephone taps and the testimony of Buttars and Michael Leder. King points out that although the telephone taps indicated that Buttars intended to deliver some marijuana to Leder, his (King's) name was not mentioned in conjunction with the transaction and the telephone taps reflected only his personal conversations with Buttars.

King contends that Leder's testimony did not establish his (King's) participation in the offense inasmuch as Leder's testimony was limited to verifying that the transaction between he and Buttars took place in Leder's car. Leder testified further that: he observed someone in Buttars' car; he had no knowledge who was in Buttars' car; Buttars did not inform him who was in her car; he really did not pay much attention to the person in Buttars' car; and he did not know King.

King further points out that although Buttars testified that he accompanied her when she drove to the vicinity of Boysen Reservoir to meet with Leder, she did not testify that he participated in the sale to Leder. Rather, Buttars testified only that she drove to the scene of the transaction, exited her car and joined Leder in his car where she completed the transaction with Leder, and that she and King thereafter left the scene.

It is King's contention that although he was present at the scene during the course of the transaction, he had no knowledge of the transaction, and did not, in any manner, take part in the delivery. Under such cir-

cumstances, according to King, the government failed to present sufficient evidence upon which he could be convicted as an aider and abettor as charged in Count III.

In response, the government, while acknowledging that "the evidence does *not* show that the Defendant took any active part in the transaction" (Brief of Appellee at 25), argues that a jury could have reasonably inferred that King's presence served as a precaution safeguarding the personal security of Buttars and that King's presence afforded Buttars "an extra set of eyes and ears" to provide surveillance with respect to the possible appearance of law enforcement officials during the transaction. According to the government, when these factors are considered, and when all the evidence is viewed in the light most favorable to the government, King's Count III conviction should be affirmed. We disagree.

■ In reviewing the trial court's denial of a defendant's motion of acquittal, we must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government to decide whether there was sufficient evidence from which the jury could find the defendant guilty beyond a reasonable doubt. *United States v. Russell*, 905 F.2d 1450, 1452 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990). Count III charged:

> On or about April 9, 1989, in the District of Wyoming, Lisa Buttars did knowingly, intentionally, and unlawfully distribute and deliver approximately one-fourth (¼) pound of marijuana, a Schedule I Controlled Substance, and JEFFREY ALLAN KING, Defendant herein, did knowingly aid and abet Lisa Buttars in the commission of said offense;
>
> In violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

(R., Vol. I, Tab 1 at 8).

In *United States v. Zamora*, 784 F.2d 1025, 1031 (10th Cir.1986), we set forth the government's burden in an aiding and abetting case:

> The government's burden on the aiding and abetting of a criminal offense is to

show that the defendant 'willfully associated himself in some positive way with the criminal venture by showing that he has joined the enterprise as something he wishes to bring about and by seeking to make it succeed by some action on his part.' *United States v. Taylor*, 612 F.2d 1272, 1275 (10th Cir.1980). Under the *Taylor* case there must be a showing that defendant knowingly associated herself in some way with the criminal venture.

■ Applying these standards to the facts herein, we hold that the district court erred in denying King's motions for acquittal on Count III.

The evidence relative to Count III established that: King was aware of Buttars' drug distribution activities; King had personally purchased drugs from Buttars; King knew that Buttars might be selling drugs to Leder on the day in question; King accompanied Buttars during the trip to meet with Leder; Buttars exited her car and entered Leder's car; and King remained in Buttars' car.

Neither Buttars or Leder testified that King participated in the transaction in any manner or that he shared in the proceeds paid by Leder to Buttars. Moreover, the government failed to establish, save through speculation, that King "willfully associated himself in some positive way with the criminal venture," that he "joined the enterprise," or that he sought "to make it succeed by some action on his part." *United States v. Taylor, supra. See also, United States v. Smith*, 838 F.2d 436, 441 (10th Cir.1988), *cert. denied,* 490 U.S. 1036, 109 S.Ct. 1935, 104 L.Ed.2d 407 (1989) ("To aid and abet one must share in the intent to commit the offense, as well as participate in some manner to assist its commission"); *United States v. Espinosa*, 771 F.2d 1382 (10th Cir.), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985) (To be guilty of aiding and abetting, a defendant must have associated himself with the venture, participated in it as something he wished to bring about and sought by his action to make the venture succeed); *United States v. Sacks*, 620 F.2d 239 (10th

**482**

Cir.1980) (Evidence showing only mere presence at the scene of the crime and knowledge that a crime is being committed is not sufficient to prove aiding and abetting).

King's convictions on Counts I, II and IV are AFFIRMED. King's conviction on Count III is REVERSED and REMANDED for entry of a judgment of acquittal. The cause is further REMANDED for resentencing.